GERALD HORST ET AL., APPELLANTS, V. HOUSING AUTHORITY OF THE COUNTY OF SCOTTS BLUFF, NEBRASKA, APPELLEE.
166 N. W. 2d 119

Filed March 21, 1969.     No. 37097.

Van Steenberg, Winner & Wood, for appellants.

Robert L. Gilbert, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

The Housing Authority of the County of Scotts Bluff commenced condemnation proceedings to acquire 24 lots in Highland Park Second Addition, for the purpose of erecting multiple unit dwellings. Each of the appellants, some 40 in number, owned a lot in the addition. Their lots were not included in the 24 lots being acquired by condemnation. The appellants were joined as condemnees because of their interest in covenants affecting all lots in the addition and restricting each lot to single family residential use. In the condemnation proceeding, each of the 40 appellants received $200 damages. The award was signed by 2 of the 3 appraisers. In an appeal to the district court by the appellants, the Housing Authority filed a motion for summary judgment on the ground that the appellants did not own an interest in the property acquired by the Housing Authority, and were not entitled to compensation. The district court sustained the motion, entered judgment for the Housing Authority, and directed the damages awarded be returned.

The issue involved is whether a condemnation of real property, which extinguishes a covenant restricting the use of the property condemned, may constitute the tak-

ing or damaging of property of owners of other land for whose benefit the restrictions were imposed. The issue is one of first impression in this state. There is a direct conflict of judicial authority. See, Annotation, Eminent Domain: Restrictive Covenant or Right to Enforcement Thereof as Compensable Property Right, 4 A. L. R. 3d 1137; 122 A. L. R. 1464; 67 A. L. R. 385; 17 A. L. R. 554.

Lines of decision are sufficiently extensive and contrasting that the positions of the courts are expressed as a majority view and a minority view. See 2 Nichols on Eminent Domain (3d Ed.), § 5.73, p. 125, et seq. The position of the Housing Authority and the judgment of the lower court reflect the minority view. The Housing Authority contends that restrictive covenants are not enforceable against the government; that such covenants are made subject to the powers of government, including the power of eminent domain; and are, therefore, void as against the government and not compensable. It is also contended that the rights of the appellants arising from such restrictive covenants are negative rights not known at common law, and, therefore, not property rights in the lots being acquired.

On the technical issue of whether such a restriction is an interest in the land being taken and, therefore, compensable, Restatement, Property, is definitive. In 1944, Restatement adopted the view that such a restrictive covenant, insofar as it creates an obligation binding upon successors, constitutes an interest in land which is extinguished by the taking of the land by eminent domain to the extent to which the taking permits a use violative of the restriction. See Restatement, Property, § 565, p. 3316. "Upon a condemnation of land subject to the obligation of a promise respecting its use in such manner as to extinguish the interest in the land created by the promise, compensation must be made to those entitled to the benefit of the promise." Restatement, Property, § 566, p. 3320.

Housing Authority also contends that if such restrictive covenants are treated as property rights in the property actually condemned, eminent domain proceedings might involve many owners in a large subdivision and make the administrative and financial burden on condemning units excessive. It is also argued that since the landowners in an adjoining addition, which had no restrictive covenants, would not be entitled to compensation if the property being condemned was located in that addition, the appellants should be in no better position because of the existence of the contractual covenants.

Housing Authority relies on the rule that a landowner whose land is not being taken is not entitled to compensation for damages of the same kind as that suffered by the public in general, even though the inconvenience and the injury to the particular landowner may be greater in degree than that to others. This argument, in effect, is that people should not be allowed to increase the value of their property by these covenants, or that the restrictive covenants here should be treated as though they did not exist, because the government is exercising its power of eminent domain. Such policy arguments are not impressive when weighed against the language of Article I, section 21, Constitution of Nebraska: "The property of no person shall be taken or damaged for public use without just compensation therefor."

It is tacitly conceded that these covenants could be enforced by the appellants against a private individual or corporation either by injunctive relief or by an action for damages for breach. It is also obvious that no injunctive relief is available against the governmental unit, and that the acquistion of the property by eminent domain extinguishes the restrictive obligation as to the land acquired. Under such circumstances, we cannot accept the premise that the government should be permitted to inflict damage without liability simply because it is the government. The constitutional language pro-

vides an effective shield. As Mr. Justice Holmes said in 1910: "It (the Constitution) does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is what has the owner lost, not what has the taker gained." Boston Chamber of Commerce v. Boston, 217 U. S. 189, 30 S. Ct. 459, 54 L. Ed. 725.

The nature of some public works might ordinarily warrant little, if any compensation. Even where substantial damages might be warranted to some owners, it would seem that the amount of damages would rapidly diminish as the distance of a claimant's lot from the condemned tract increased. See Aigler, Measure of Compensation for Extinguishment of Easement by Condemnation, 1945 Wis. L. Rev. p. 5, et seq.

Whether the interests involved here be treated as negative easements, equitable easements, equitable servitudes, or contractual covenants running with the land, they constitute property in the constitutional sense and must be compensated for if their extinguishment results in damage to the owners. We therefore hold that lawful covenants restricting the use of land and binding upon successors in title constitute an interest in the land, and property in the constitutional sense. Where the taking of the land by eminent domain permits a use violative of the restrictions and extinguishes such interest, there is a taking of the property of the owners of the land for whose benefit the restrictions were imposed, and such an owner is entitled to compensation for the damage, if any, to his property.

For the reasons stated, the judgment of the district court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.