**UNITED STATES of America,
Plaintiff,**

v.

**MISSISSIPPI VALLEY TITLE
INSURANCE CO., Defendant.**

No. FS-73-C-2.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Dec. 10, 1975.

Bethel B. Larey, Texarkana, Ark. by Sam Hugh Park, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

James M. McHaney, Owens, McHaney & McHaney, Little Rock, Ark., for defendant.

## OPINION

PAUL X WILLIAMS, Chief Judge.

Plaintiff is the Government of the United States of America, and jurisdiction is vested in this Court by 28 U.S.C. 1345. The plaintiff, acting by its Department of the Army, Corps of Engineers, purchased two Certificates of Title from the defendant corporation. It now claims that it has suffered a loss of $6,000 because of an error in the Certificates of Title and seeks recovery in that amount. The defendant filed a timely answer, and the case was submitted to the Court on an agreed statement of facts.

The defendant alleges that the Certificates of Title it sold were not policies of insurance, and that the statute of limitations, 28 U.S.C. 2415, bars this suit. For the reasons stated in this Opinion, we hold:

1. That the suit is not barred by limitations;

2. That the Certificates of Title purchased by the plaintiff were insurance contracts;

3. That the plaintiff cannot show any loss, and if a loss was sustained it was beyond the coverage of the policy.

The case arises from activity of the plaintiff in constructing a navigation system on the Arkansas River. That work required the condemnation of an easement on Morris Island, a strip of land adjacent to the riverfront at Fort Smith, Arkansas. In connection with its eminent domain action, the plaintiff in 1961 purchased from the defendant a Certificate of Title covering the property, and in 1963 purchased an updated Certificate of Title covering the same land. In both cases, the plaintiff furnished a standard government form, entitled "Form 903: Department of the Army: Certificate of Title" which was completed and executed by the defendant.

On both Certificates of Title, the defendant certified that it had made a thorough search of the title to the prop-

erty in question, which was described by metes and bounds on a schedule attached to the Certificates. The defendant further certified that the title to the property was indefeasibly vested of record in certain persons, Ward, et al., as of the date of the certificate, free and clear of all matters except those shown on Schedule "B" to the Certificate. In each case, Schedule "B" contained the normal exceptions found in most abstracts or title certificates, but Schedule "B" did not mention the possible existence of a competing chain of title covering the property, nor warn the plaintiff that another record holder of the property existed.

Both the 1961 and 1963 Title Certificates contain the following language:

> "The maximum liability of the undersigned under this Certificate is limited to the sum of: acquisition cost. In consideration of the premium paid, this certificate is issued for the use and benefit of the United States of America."

■ The defendant has affirmatively pleaded the Statute of Limitations, 28 U.S.C. 2415, as a defense. In order to resolve that issue, it is necessary to first determine the legal status of the Certificates of Title. We follow the holding of the Court of Appeals for the District of Columbia Circuit and find them to be policies of insurance. *Real Estate Title Insurance Co. v. District of Columbia,* 82 U.S.App.D.C. 170, 161 F.2d 887 (D.C.Cir. 1947). The language of the Certificates will allow no other conclusion.

■ Since the Certificates are insurance policies, it follows that they are contracts of indemnity, and the limitations applicable to contract suits must be applied. 18 Couch on Insurance 2d, p. 708, Sec. 75:2; Annotation, 3 A.L.R.2d 834. Absent some other specific provision, the period of limitations on such insurance contracts begins to run from the time the cause of action accrues. Since the alleged loss occurred on June 8, 1970, and this suit was filed on January 5, 1973, the plaintiff is well within the six year period provided by law for bringing the suit.

■ The Certificates of Title were contracts whereby the defendant agreed, in exchange for a premium, to protect the plaintiff against all loss or damage, not in excess of the specified sum, which the plaintiff might sustain as a result of an error in the information concerning the state of the record title. The doctrines of skill and negligence have no application to such a contract, and knowledge by the insured would not lessen the liability of the insurer. 1 Couch on Insurance 2d, pp. 97–98, Sec. 1:100.

The lengthy and complex history of this dispute may be found in four reported decisions, and it is not necessary to recite the facts in detail in this opinion. See, *U. S. v. 133.79 Acres,* 230 F.Supp. 973 (W.D.Ark.1964); *U. S. v. Fort Smith River Development Corp.,* 349 F.2d 522 (8th Cir. 1965); *Garrison Furniture Co. v. Southern Enterprises Inc.,* 245 Ark. 927, 436 S.W.2d 278 (1969); *U. S. v. 133.-79 Acres,* 313 F.Supp. 697 (W.D.Ark. 1970).

On June 8, 1970, this Court, Judge John E. Miller presiding, found that the fair market value of the easement on Morris Island was $12,000, and entered judgment against the plaintiff in that amount. The plaintiff had hoped to acquire the easement for less, and to that end had executed stipulations with competing claimants to ownership of the land.

■ We cannot say that the government sustains a "loss" of any sort when it pays fair market value for an estate in land which it acquires by eminent domain. This Court has stated in the strongest language that the minimum fair market value of this easement was $12,000, and the government has paid only one judgment in that amount.

If it were assumed that the plaintiff sustained a loss, the defendant still could not be held to indemnify the government. The peril insured against was a mistake in searching the title records. There is a strong indication that the defendant made such a mistake, but the cause of the loss, if any, was the judg-

ment of this Court. This Court held that the plaintiff had to pay fair market value of $12,000, regardless of the state of the title, and that was not an event within the coverage of the insurance policy. The plaintiff had not insured against an unfavorable judgment, and cannot recover because the Court did not agree with its position on fair market value.

It follows that the Complaint must be dismissed, and this case closed. The Clerk will prepare an Order accordingly, each party to bear its own costs.